UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MARTIN J. WALSH, ) <br> Secretary of Labor, United States ) <br> Department of Labor, ) <br> ) <br>     Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> CRAFTSMAN INDEPENDENT UNION, ) <br> a labor organization, ) <br> CRAFTSMAN INTERNATIONAL UNION, ) <br> a labor organization, ) <br> FRED KELLEY, an individual, ) <br> WILLIAM KITCHEN, an individual, ) <br> RANDY KITCHEN, an individual, ) <br> NELSON FIEDLER, as individual, ) <br> JERRY MILLER, an individual, ) <br> TERRENCE KELLEY, an individual, ) <br> JERRY DEWROCK, an individual, ) <br> EDWARD DOWNS, JR., an individual, ) <br> CRAFTSMAN INDEPENDENT UNION ) <br> LOCAL #1 TRAINING FUND, an employee ) <br> benefit plan, ) <br> and CRAFTSMAN INDEPENDENT UNION ) <br> LOCAL #1 HEALTH, WELFARE AND ) <br> HOSPITALIZATION FUND, an employee ) <br> benefit plan, ) <br> ) <br>     Defendants. ) | Case No. 1:11 CV 87 CDP |

## MEMORANDUM AND ORDER OF REFORMATION

Receivership Management, Inc. ("RMI"), the Court-appointed independent fiduciary of Defendant Craftsman Independent Union Local #1 Health, Welfare and Hospitalization Fund (the "Health & Welfare Plan"), filed a motion (ECF 28) seeking to reform and terminate the trust holding the assets of the Health & Welfare Plan, known as the Craftsman Independent Union Health, Welfare and Hospitalization Fund (the "Trust"). RMI also seeks an Order allowing it to destroy certain outdated records of the

Health & Welfare Plan.  Both the Health & Welfare Plan and the Trust are governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA").  For the reasons stated herein, and in the absence of any opposition to RMI's motion, I will grant the relief RMI seeks, pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3).

**Background.**

This Court entered a Consent Judgment (ECF 13) in this action on June 20, 2011 (the "Consent Judgment"), which fully settled all of the claims Plaintiff brought against the Defendants in the Complaint and which appointed RMI as the independent fiduciary of the Craftsman Independent Union Local #1 Training Fund (the "Training Plan") and the Health & Welfare Plan (collectively, the "Plans").[1]  The Plans have been "welfare plans" governed by ERISA at all relevant times.

The Court granted authority to RMI to take certain enumerated actions, notably, "full authority to collect, marshal and administer all of the Plans' assets (including the Clinic[2]), including the authority to liquidate Plan assets, effectuate the termination of the Plan or Plans (if appropriate), identify all legitimate claimants of the Plans and pay the amount of their claims, distribute the Plans' assets for the benefit of eligible participants and to pay service providers."  Consent Judgment, ¶ 4 (footnote added).  The Court also

---

[1] I subsequently entered an Amended Consent Judgment (ECF 22) on September 12, 2011; however, it did not alter or rescind any of the provisions of the Consent Judgment or add new provisions that are relevant to RMI's motion or this opinion.

[2] At the time the Court entered the Consent Judgment, the Health & Welfare Plan was the sole owner of the Midtown Family Medical Center, LLC (the "Clinic").

granted RMI the power and authority "to exercise full authority and control with respect to the management or disposition of the assets of the Training Plan and the Health and Welfare Plan (including the Clinic)." *Id., ¶* 5.  The Court retained jurisdiction over this action and the parties hereto as may be necessary to enforce the provisions of the Consent Judgment. *Id., ¶* 20.

The assets of the Health and Welfare Plan are held in the Trust.  RMI administers the Trust pursuant to an Agreement and Declaration of Trust dated effective January 4, 1984 (the "Trust Agreement").

RMI, as Court-appointed independent fiduciary of the Plans, terminated the Training Plan on September 15, 2011, settled certain obligations between the Training Fund and the Defendant Unions, and transferred the Training Plan's remaining assets to the Trust, for use in connection with the Health and Welfare Plan, on May 23, 2013.  RMI also sold the Clinic's assets to an unrelated third party on October 13, 2011, with the sales proceeds being added to the assets of the Trust, for use in connection with the Health and Welfare Plan. Accordingly, only the Trust and the Health & Welfare Plan exist at this time.

The Health & Welfare Plan is embodied in three written instruments[3]:  (1) a plan document and summary plan description (the "Plan Document"); (2) the Trust Agreement; and (3) policies for group health and life insurance.  The Health and Welfare Plan's group insurance policies have been terminated and are not relevant to RMI's motion or this

---

[3] An ERISA "plan" can consist of multiple documents (*e.g.*, plan and trust). *Jobe v. Med. Life Ins. Co.,* 598 F.3d 478, 479 (8th Cir. 2010) (citing *Admin. Comm. of the Wal-Mart Stores, Inc. v. Gamboa,* 479 F.3d 538, 542 (8th Cir. 2007)).

opinion.

The Plan Document contains the following relevant language:

## ARTICLE XXIII
## TERMINATION OF PLAN

*The following information regarding the condition under which the Plan may be terminated, and the disposition of the assets of the Plan on termination, is furnished in accordance with federal laws and regulations.*

Condition of Termination

*The Plan will be terminated upon the termination of the Trust Agreement establishing the Plan. The Trust Agreement will terminate upon the happening of either of the following events:*

•       *When there is no longer in effect an agreement between any of the employers and the Union requiring employer contributions to the Fund;* or

•       In the event the Independent Fiduciary should decide unanimously, with the consent of the employers and the Union, to terminate the Trust.

Procedure in the Event of Termination

Upon termination of the Trust, the Fund will continue to provide the benefits outlined in the Plan until the assets of the Fund are completely exhausted.

(Bold italics added.)

The Trust Agreement contains the following language relevant to this motion:

## ARTICLE IV
## PURPOSE

*All monies paid to the Trustees,* under the provisions of collective bargaining agreements requiring payments into this fund, *shall be and remain a Trust Fund for the sole and exclusive purpose of providing and maintaining Accident, Health, Hospitalization, Medical, Disability, Sickness, Life and other benefits for employees and their dependents.*

The Trustees shall have the sole and exclusive right to determine and select types and amounts of benefits payable.  Nothing in this Agreement shall be construed as giving any person any right, title or interest in or to any part of this Fund otherwise than as determined by the Board of Trustees in accordance with the purposes of this Trust.

- 4 -

**            **            **

## ARTICLE IX
## TERM

*The fund* is and shall constitute an irrevocable trust created to provide group life, accident, health and other insurance benefits for the employees who meet the qualifications and conditions as may be established by the Trustees under the authority granted to the Trustees and ***shall endure so long as the purposes for its creation shall exist.***

(Bold italics added.)

On January 21, 2020, the Defendant Unions filed Forms LM-3 (LABOR ORGANIZATION ANNUAL REPORT) with the U.S. Department of Labor (collectively, "Forms LM-3"). The Forms LM-3 state that each Defendant Union ceased all operations effective December 31, 2019. As a result of those filings, RMI has been winding down the business and affairs of the Trust and the Health & Welfare Plan. All benefit claims under the Health & Welfare Plan have been adjudicated and paid, and all underlying insurance contracts associated with the Health & Welfare Plan have been terminated. There are no longer any individuals covered by any ERISA plan funded with Trust assets. Accordingly, Article XXIII of the Plan Document and Article IX of the Trust Agreement, quoted *supra*, require termination of the Trust.

At present, all of the Health & Welfare Plan's assets are held in the Trust, and the Trust holds no other assets. Trust assets amounted to $713,168.77 as of July 13, 2021. Although the Trust Agreement provides that the Trust "shall endure so long as the purposes for its creation shall exist," and the Plan Document contains language addressing Plan and Trust termination, neither the Trust Agreement nor the Plan Document contains provisions instructing how to distribute assets remaining at Trust termination when the purposes for

which the Trust was created cease to exist. However, Article XIII of the Trust Agreement adds, in relevant part, "no amendment [to the Trust Agreement] shall divert the fund as then constituted, or any part thereof, to a purpose other than as set forth herein, or permit a return or payment to employers from the fund..."

This Court conferred upon RMI the power and authority to "effectuate the termination of the Plan or Plans (as appropriate),"[4] but RMI cannot do so without breaching its fiduciary duty under the extant Plan Document and Trust Agreement, since the Trust no longer has any beneficiaries and since payment to the contributing employers is prohibited. For this reason, RMI filed its motion to reform and terminate the Trust.

**Discussion.**

I turn now to the issues of ERISA preemption of state law and the availability of an appropriate remedy under ERISA.

1. *ERISA Preemption.*

Although the Health & Welfare Plan and its Trust are governed by ERISA, Article XI of the Trust Agreement makes no reference to ERISA and instead states that the Trust is governed by the laws of the State of Missouri. Therefore, in order to determine the scope of my authority to grant the relief RMI seeks, I must first determine whether ERISA or Missouri law[5] applies. Because the Trust's purposes are solely related to the creation,

_____

[4] Consent Judgment (ECF 13), p. 4, ¶ 4.

[5] Missouri has enacted several statutes regarding state court proceedings to modify or terminate a trust. *See, e.g.*, Mo. Rev. Stat. §§ 456.2-202-3(12) (Jurisdiction over trustee and beneficiary); 456.4-410 (Modification or termination of trust - proceedings for approval or disapproval); 456.4-411A (Modification or termination of noncharitable irrevocable trust by

funding, and administration of the types of ERISA-governed plans stated in the Trust Agreement, because the Trust is part of the Health & Welfare Plan,[6] because the Trust and the Health & Welfare Plan are governed by ERISA,[7] and because ERISA generally preempts all state laws that relate to ERISA-governed plans, I find that ERISA controls. *Aetna Health Inc. v. Davila,* 542 U.S. 200, 209 (2004) ("any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."); *see also Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 143-45 (1990).

ERISA preempts the Missouri statutes cited in footnote 5, *supra,* as applied to ERISA employee benefit plans, because those state laws duplicate, supplement, or supplant an ERISA civil enforcement remedy, namely, Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).  ERISA Section 502(a)(3), among other things, allows an ERISA plan fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate

---

consent, exceptions); 456.4-411B (Modification or termination of noncharitable irrevocable trust by consent - applicability); 456.4-412 (Modification or termination because of unanticipated circumstances or inability to administer trust effectively); 456.4-413 (Cy pres); 456.4-414 (Modification or termination of uneconomic trust); 456.4-415 (Reformation to correct mistakes); 456.4-416 (Modification to achieve settlor's tax objectives); and 456.8-817 (Distribution upon termination).

[6] ERISA typically treats "fiduciaries" as trustees and "plans" as trusts.  *Cigna Corp. v. Amara,* 563 U.S. 421, 439 (2011).

[7] *See* Consent Judgment (ECF 13), pp. 1-2.

equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." Federal district courts have exclusive subject-matter jurisdiction over such matters. 29 U.S.C. § 1132(e)(1).

2. *Reformation and ERISA.*

The next step in applying ERISA Section 502(a)(3) is to determine what appropriate equitable relief is needed (i) to redress violations of Title I of ERISA or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan. Here, had the ERISA plans funded under the Trust simply continued until Trust assets were depleted, the Plan Document and the Trust Agreement could easily be interpreted to allow RMI to terminate the Trust at that point, without having to file the instant motion. But that is not what happened. Instead, the Defendant Unions unexpectedly ceased operations, and the ERISA plans funded by the Trust ceased to have participants as a result thereof. The Plan Document and the Trust Agreement now technically violate Title I of ERISA because they do not address that situation, yet both instruments now expressly require the Trust's termination. In this regard, ERISA Section 403(d)(2), 29 U.S.C. § 1103(d)(2), states, "The assets of a welfare plan which terminates shall be distributed in accordance with the terms of the plan, except as otherwise provided in regulations of the Secretary [of Labor]."[8]

Were this merely a circumstance whereby the Court-appointed independent

---

[8] To date, the Secretary of Labor has not issued regulations under ERISA Section 403(d)(2).

fiduciary could amend the Plan Document and Trust Agreement on its own to further the stated purposes of the Trust, RMl's motion would not be necessary. However, since the stated purposes of the Trust no longer exist, and since there is no language in the Plan Document or Trust Agreement for RMI to follow, RMl's motion to reform and terminate the Trust is appropriate.

Reformation is a type of "appropriate equitable relief' available under 29 U.S.C. § 1132(a)(3). *Amara,* 563 U.S. at 440-42. The power to reform contracts (as contrasted with the power to enforce contracts as written) is a traditional power of an equity court, not a court of law, and is used to prevent mistake or fraud. *Id.* at 440-41 (citing *Baltzer v. Raleigh & Augusta R. Co.,* 115 U.S. 634, 645 (1885) ("[I]t is well settled that equity would reform the contract, and enforce it, as reformed, if the mistake or fraud were shown."), and other 19th-century cases).

The drafting omission now affecting the Trust Agreement is a mistake that allows this Court to reform the Trust Agreement to insert provisions regarding final distributions of Trust assets upon termination of the Trust and to ensure that the Trust Agreement complies with Title I of ERISA in connection with its termination. In its motion, RMI proposes that the Court reform Article IX of the Trust Agreement by adding a second paragraph thereto to allow the remaining assets of the Trust (after payment of all trust administration expenses) to be paid to one or more organizations organized exclusively for charitable, religious, educational, and scientific purposes under Section 501(c)(3) of the Internal Revenue Code of 1986, or corresponding sections of any future federal tax code, to read as follows:

## ARTICLE IX
## TERM

> The fund is and shall constitute an irrevocable trust created to provide group life, accident, health and other insurance benefits for the employees who meet the qualifications and conditions as may be established by the Trustees under the authority granted to the Trustees and shall endure so long as the purposes for its creation shall exist.
>
> In the event the purposes for which this fund was created cease to exist, and after payment of all of the aforementioned benefits to or for the benefit of eligible employees and/or their covered dependents, and all expenses related to the administration of such benefit programs, the fund shall terminate.  On such termination, the fund's assets shall be distributed to one or more corporations, trusts, funds, foundations, or community chests created or organized in the United States or in any of its possessions, whether under the laws of the United States, any state or territory, the District of Columbia, or any possession of the United States, organized and operated exclusively for one or more exempt purposes within the meaning of section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code, or shall be distributed to the federal government, or to a state or local government, or to any political subdivision of any of the foregoing, for a public purpose.

I find that RMl's proposed reformation of the Trust Agreement is proper, given that the Trust's original purposes have ceased to exist.

**Specific Donation.**

RMI also proposes that all Trust assets remaining after payment of expenses be used to fund a scholarship at Southeast Missouri University Foundation (the "Foundation"), to be awarded by Southeast Missouri State University ("SEMO") to SEMO students pursuant to the terms and conditions stated in the document submitted to the Court entitled, "Biography of Craftsman Independent Union Local #1 Health, Welfare, and Hospitalization Trust and Establishment of the CIU HWH Endowed Scholarship."  (ECF 30 at Exh. 4.)  RMI has furnished the Court with a copy of the Foundation's Internal Revenue Service determination

letter as to its status as a 501(c)(3) tax exempt organization. Accordingly, I find that RMl's proposed donation to the Foundation is a proper use of Trust assets, taking into account the reformation of the Trust Agreement, *supra.*

**Destruction of Outdated Records.**

RMI has informed the Court that it, as the Court-appointed independent fiduciary of the Health & Welfare Plan, continues to possess the following records, all of which are more than six years old:

- A. Business records of the Midtown Family Medical Clinic, including, without limitation, Midtown Family Medical Clinic employment records, billings, lab services contracts, medical claims submissions, routine submissions to the Centers for Medicare and Medicaid (CMS) related to rural health clinic reporting, invoice and accounting for clinic pharmacy operations, service and supply contracts with utilization reporting entities, pharmaceutical wholesalers, medical equipment vendors, and dead patient records;

- B. Medical claims and records for periods prior to 2014, including, without limitation, medical records dated prior to the sale of the Midtown Family Medical Clinic in 2012 of deceased patients of the Clinic; and

- C. Enrollment records for periods prior to 2014, including, without limitation, records of banked hours for members of the Defendant Unions for purposes of determining their eligibility to participate in the

      Health and Welfare Plan prior to 2014.

ERISA Section 107 states the following record retention requirements:

> ***Every person subject to a requirement  to file any report*** (including the documents described in subparagraphs (E) through (I) of section 1021(k) of this title) or to certify any information therefor under this subchapter or who would be subject to such a requirement but for an exemption or simplified reporting requirement under section 1024(a)(2) or (3) of this title ***shall maintain a copy of such report and records on the matters of which disclosure is required which will provide in sufficient detail the necessary basic information and data from which the documents thus required may be verified, explained, or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions, and shall keep such records available for examination for a period of <u>not less than</u> six years after the filing date of the documents based on the information which they contain, or six years after the date on which such documents would have been filed but for an exemption or simplified reporting requirement under section 1024(a)(2) or (3) of this title.***

29 U.S.C. § 1027 (bold italics and underlining added).

      RMI has submitted that none of the above records are likely to have any use – either currently or after the termination of the Trust and the Health and Welfare Plan. Many of these records contain "personal health information" within the meaning of the privacy and security rules of the Health Insurance Portability and Accountability Act of 1996, as amended ("HIPAA"),[9] and RMI does not want to incur further expense in connection with safeguarding such outdated records after Trust termination. RMI has requested the Court's approval to destroy those records. In the absence of any

---

[9] *See* 45 C.F.R. §§ 160-164, generally. The definition of "protected health information" is found at 45 C.F.R. § 160.103 and applies to both the HIPAA privacy and security rules. Note that a person has to have been deceased for at least 50 years for their medical records to cease being "protected health information."

opposition to RMl's motion, I see no reason why I should deny such request.

Accordingly,

**IT IS HEREBY ORDERED** that RMI's Motion to Reform [28] is **GRANTED** in its entirety.

**IT IS FURTHER ORDERED** that the Trust Agreement is reformed to include the following as a second paragraph in Article IX, TERM:

> In the event the purposes for which this fund was created cease to exist, and after payment of all of the aforementioned benefits to or for the benefit of eligible employees and/or their covered dependents, and all expenses related to the administration of such benefit programs, the fund shall terminate.  On such termination, the fund's assets shall be distributed to one or more corporations, trusts, funds, foundations, or community chests created or organized in the United States or in any of its possessions, whether under the laws of the United States, any state or territory, the District of Columbia, or any possession of the United States, organized and operated exclusively for one or more exempt purposes within the meaning of section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code, or shall be distributed to the federal government, or to a state or local government, or to any political subdivision of any of the foregoing, for a public purpose.

**IT IS FURTHER ORDERED** that RMI's request to donate the assets remaining in the Health & Welfare Plan and the Trust, upon termination and after payment of all expenses in connection with the Trust's termination, to a tax-exempt 501(c)(3) organization pursuant to paragraph second of Article IX of the Trust Agreement as reformed, and specifically to the Southeast Missouri University Foundation, is **GRANTED.**  Said donation shall be made in accordance with and disbursed under the terms and conditions set out in the "Biography of Craftsman Independent Union Local #1 Health, Welfare, and Hospitalization Trust and Establishment of the CIU HWH Endowed Scholarship."

**IT IS FURTHER ORDERED** that RMI's request for permission to destroy certain outdated records, within the scope of the categories enumerated above, some of which contain HIPAA-protected personal health information of living and deceased former covered persons in the Health & Welfare Plan, is **GRANTED.**

**IT IS FURTHER ORDERED** that RMI shall petition the Court for a termination of its appointment as independent fiduciary in this action upon completion of all trust and plan administrative duties, including, without limitation, the payment of all outstanding expenses of the Health & Welfare Plan and the Trust, the payment of the aforementioned donation to the Southeast Missouri University Foundation, the filing of a final report as to its actions in this appointment with the U.S. Department of Labor, and the filing of all final tax returns and other governmental filings due.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of October, 2021.